UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARMJIT KAUR CHAHAL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SSA,<br><br>Defendant. | No. 2:15-cv-1701 AC<br><br><br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be granted, and defendant's cross-motion for summary judgment will be denied. The matter will be remanded to the Commissioner for further proceedings consistent with this decision.

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 1, 2012. Administrative Record ("AR") 13 (Decision).[2]

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

[2] The AR is electronically filed at ECF Nos. 8-3 to 8-14 (AR 1 to AR 831).

1

The disability onset date was alleged to be July 23, 2010.  Id.  The application was disapproved initially and on reconsideration.  Id.  On September 6, 2013, ALJ Peter F. Belli presided over the hearing on plaintiff's challenge to the disapprovals.  AR 29-53 (transcript).  Plaintiff, who appeared with her counsel Minna Williams, was present and testified through a Punjabi translator at the hearing.  No vocational expert was present.

On January 14, 2014, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 13-24 (decision), 24-28 (exhibit list).  On June 12, 2015, after receiving a Representative Brief as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-6 (decision and additional exhibit).

Plaintiff filed this action on August 10, 2015.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 4, 5.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 11 (plaintiff's summary judgment motion), 14 (Commissioner's summary judgment motion).

## II.  FACTUAL BACKGROUND

Plaintiff was born on October 20, 1972, and accordingly was, at age 39, a "younger" person under the regulations, when she filed her application.[3]  AR 23.  Plaintiff has twelve years of education in India.  AR 41, 426.  The ALJ made no finding on plaintiff's ability to communicate in English; at the hearing the ALJ seemed to disbelieve plaintiff's assertion that she could only speak a "little bit" of English.  See AR 31-32.

Plaintiff was last employed as a "Xyratex Inspector" at an electronic company from February 2005 to July 2010.  AR 23, 186.  Before that, plaintiff worked as a "Cashier" at a gas station, from December 2003 to May 2004, and she did "Assembly" at an electronic company from June 2004 to January 2005.  AR 23, 186.

////

---

[3] See 20 C.F.R. § 404.1563(c) ("younger person").

2

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error,

which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. § 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. § 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. § 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not,

4

the claimant is disabled.

Id. § 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since July 23, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: degenerative joint disease of the right shoulder, degenerative disc disease of the cervical spine, headaches and chronic pain (20 CFR 404.1520(c)).
>
> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations: the claimant is able to occasionally climb ladders, ropes or scaffolds. The claimant is limited to frequent crawling. The claimant is limited to occasional overhead reaching with the right upper extremity.
>
> 6. [Step 4] The claimant is capable of performing past relevant work as a xyratex inspector, assembly and cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from July 23, 2010, through the date of this decision (20 CFR 404.1520(f)).

AR 13-24.

1  As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and

2  223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 24.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by failing to find that plaintiff's depression was "severe" at Step 2.  Because the ALJ did err, and "harmless error" analysis does not apply in this case for the reasons explained below, the court will not address plaintiff's other arguments.

### A.  Step Two – Depression

At Step Two, the ALJ was required to determine whether plaintiff had any "severe" impairments.  See 20 C.F.R. § 404.1520(a)(4)(ii), (c); Titles II & XVI: Evaluation of Symptoms in Disability Claims (SSR 16-3p), 81 Fed. Reg. 14,166, 14,171 (March 16, 2016) ("[a] 'severe' impairment 'is one that affects an individual's ability to perform basic work-related activities'").  Since plaintiff alleged that she was disabled, at least in part, by the mental impairment of depression, the ALJ was required "to follow a special psychiatric review technique."  Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a) (in evaluating the severity of mental impairments, "we must follow a special technique at each level in the administrative review process").

#### 1. Special psychiatric review technique

##### a. Medically determinable impairment

First, under this technique, the ALJ must first determine whether plaintiff has "a medically determinable mental impairment(s) …."  20 C.F.R. § 404.1520a(b)(1).  The ALJ did this, and found that plaintiff had the "medically determinable mental impairment of depression."  AR 15.

##### b. Rating the degree of functional limitation

Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in four specific functional areas.  20 C.F.R. § 404.1520a(b)(2), (c).  The ALJ must rate the degree of limitation in the first three areas – activities of daily living; social functioning; concentration, persistence, or pace – using "the following five-point scale: None, mild, moderate, marked, and extreme."  Id. § 404.1520a(c)(4).  The ALJ must rate the degree of limitation in the final area – episodes of decompensation – using "the following four-point scale: None, one or

two, three, four or more."

Here, the ALJ did not apply the special technique to evaluate the severity of plaintiff's mental impairment at Step Two. This was error. Instead, the ALJ analyzed the severity level using the Listings of Impairments (the "Listings"), 20 C.F.R Part 404, Sept. P, App'x 1, which is intended for use at Step Three. Under his analysis, the ALJ rated plaintiff's limitations as: none, in the activities of daily living; "mild," in social functioning; "mild," in concentration, persistence or pace; and none, in episodes of decompensation. AR 16.

### c. Severity of functional limitation

Third, the ALJ must use the ratings to determine the severity of the mental impairment. If the degree of limitation in the first three functional areas is "none" or "mild," and the degree of limitation is "none" in the fourth area, the impairment is "not severe," unless "the evidence otherwise indicates that there is more than a minimal limitation" in the plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). However, if the ALJ finds that the functional limitation in even one of these areas is "extreme" (or finds four or more episodes of decompensation), then that rating "represents a degree of limitation that is incompatible with the ability to do any gainful activity." Id. In other words, even though this technique is being applied at Step Two, a sufficiently severe rating – one that recognizes "extreme" limitations in even *one* functional area – will render the plaintiff disabled without any need to proceed through the rest of the sequential analysis. Id.

The ALJ here, after applying the ratings erroneously derived from the Listings – namely, "none" or "mild" ratings in the first three areas, and a "none" rating in the fourth – found that plaintiff's mental impairment was "nonsevere." AR 15.

### 2. Resolution

Plaintiff argues that the ALJ erred at the Second Step, and that in fact there is no substantial evidence to support the ratings the ALJ reached or the "nonsevere" conclusion he reached. See ECF No. 11 at 12-15. Plaintiff is correct. As discussed below, the ALJ committed legal error by failing to apply the special psychiatric review technique mandated by 20 C.F.R. § 404.1520a. In addition, the analysis the ALJ did conduct is not supported by substantial

1  evidence. Moreover, contrary to defendant's assertion (ECF No. 14 at 6), these errors are not
2  harmless.
3      The ALJ states that he based his severity ratings on plaintiff's testimony (AR 34-53), the
4  representations she made on her Function Report (AR 179-85, Exh. 5E), the examination by
5  psychiatrist Robert McAuley, M.D. (AR 742-44, Exh. 11F), and the findings of the State agency
6  reviewing physicians Phaedra Caruso-Radin, Psy. D. (AR 61, Exh. 2A) and Margaret Pollack, Ph.
7  D. (AR 74, Exh. 4A). See AR 16. However, these citations do not provide substantial evidence
8  for the ALJ's severity rating.

### a. Activities of daily living

10  The ALJ concludes that plaintiff has no limitation in this functional area. AR 16.

#### i. Plaintiff's representations

12  According to the ALJ, plaintiff "represented she is capable of the following: cares for her
13  children, performs personal care tasks, prepares meals, completes light household chores, washes
14  laundry, drives a car, shops for groceries, sews, dances and visits with others." AR 16 (citing
15  Exh. 5E (Function Report) and Hearing Testimony).
16      Plaintiff's Function Report and testimony indeed indicates that plaintiff shops for
17  groceries once or twice a week, and "sometimes" drives her son to and from school. AR 48, 179
18  ¶ 6, 182 ¶ 16.
19      However, the court cannot find evidence in the Function Report or plaintiff's testimony
20  showing that plaintiff is able to care for her children. To the contrary, in plaintiff's Function
21  Report, she states that she did *not* "take care of anyone such as … children …." AR 180
22  (Function Report).
23      The court similarly finds no evidence in the cited sources showing that plaintiff performs
24  personal care tasks. The only thing plaintiff stated in the Functional Report regarding "personal
25  care" was that she "needs help to button or zip shirts," "needs help to wash hair," "can't do my
26  hair as I used to do," needs reminders to take care of personal needs and grooming, and
27  "sometimes I don't remember if I took shower or not." AR 180-81 ¶ 12(a), (b).
28      Plaintiff checked off "Yes" on the Function Report question asking whether she prepares

her own meals. AR 181 ¶ 13(a). However, her descriptive answers to this question show that she does not prepare her own meals: "my mom takes care most of the cooking but *I tries to help her*, when I am feeling little better;" and "I don't do anything by myself, always mom helps me." AR 181 ¶ 13(a) (emphasis added).

Plaintiff states that she is able to do "some cleaning, some light laundry." AR 181 ¶ 14(a). However, her descriptions of these activities show that she is, at best, barely able to do these things: "It takes almost one day to week to finish," and regarding "cooking, cleaning, laundry, needs lots of help." AR 181 ¶ 14(b), (c).

There is no evidence that plaintiff "sews and dances." Plaintiff specifically identified "sewing" and "dancing" as things she could do before her illness, but that she "can't do now." AR 180 ¶ 10. Later in the Function Report, plaintiff identifies dancing and sewing among her "hobbies and interests." AR 183 ¶ 18(a). However, the fact that these remain interests of plaintiff's does not indicate that she is able to pursue them, or that she has repudiated her clear statement that she cannot do those things. To the contrary, plaintiff clarifies that her participation in these interests is "mostly absent," and even when she can do them, she does them "not well." AR 183 ¶ 18(b), (c).

There is no evidence that plaintiff engages in social activities or "visits with others" on a social basis. Although plaintiff checked off "Yes" for the Function Report question asking whether she spends time with others, it is clear from her descriptions that this is not "social time" that plaintiff is referring to. See 183 ¶ 19(a). The only thing plaintiff does "with others" is "talking about my injury, pain and problems," and the only time this happens is during "doctors visits." AR 183 ¶ 19(a), (b).

### ii. State agency reviewing physicians

The State agency reviewing physicians also found no limitations in plaintiff's activities of daily living. However, these findings were based upon the same erroneous factual recitations offered by the ALJ. These same erroneous recitations formed the basis for the State agency reviewing physicians' conclusions regarding social functioning and concentration, persistence and pace.

iii. Dr. McAuley

Plaintiff does identify evidence that she has limitations in activities of daily living. In the evidence cited by the ALJ, Dr. McAuley, after examining plaintiff, diagnosed plaintiff with "Major Depressive Disorder, Severe," having found plaintiff to suffer various symptoms, including "low energy." AR 742-43. While "low energy" is not specifically listed as one of the activities of daily living, it would appear to adversely affect plaintiff's ability to engage in any of those activities. Accordingly, it tends to corroborate plaintiff's assertions about her inability to engage in those activities.

b. Social functioning

The ALJ found that plaintiff has "mild limitation" in social functioning. AR 16. However, the ALJ relies upon some of the same erroneous factual recitations he used in the activities of daily living, namely, plaintiff's alleged ability to care for her children, and her alleged time spent socializing with others.

The ALJ asserts that Dr. McAuley "failed to mention any issues related to social functioning." AR 16. That is not so. The ALJ overlooks Dr. McAuley's recitation of plaintiff's history of "social withdrawal since at least 2010." See AR 742. "Social withdrawal" is one of the indications of a limitation in social functioning. See Listings ¶ 12.00C(2) ("impaired social functioning" may be demonstrated by, among other things, "social isolation").

c. Concentration, persistence or pace

The ALJ found that plaintiff has "mild limitation" in concentration, persistence and pace. AR 16. The ALJ acknowledged plaintiff's representation that she could only pay attention for 5-10 minutes, and that she had difficulty with memory, concentration, completing tasks and understanding. Id. The ALJ also mentions Dr. McAuley's report, but fails to mention or discuss Dr. McAuley's recitation of plaintiff's history of "inability to concentrate." Id.; see AR 742.

3. Harmless error analysis

It is, of course, plaintiff's burden to produce evidence of her disability. Here, plaintiff has produced such evidence in the form of Dr. McAuley's opinion, which recites and relies upon plaintiff's history of low energy, social withdrawal and inability to concentrate. See AR 742-44

(Exh. 11F). The ALJ erred in failing to mention or discuss the evidence of impairment contained in Dr. McAuley's opinion, and in relying instead on an erroneous recitation of plaintiff's Functional Report and her testimony.

### a. Legal inapplicability of harmless error analysis

Normally, the court would engage in a "harmless error" analysis at this point. That is because a finding that an impairment is not "severe" at Step Two is generally harmless if (1) the ALJ finds that other impairments are severe, (2) Step Two is therefore resolved in plaintiff's favor, and (3) the limiting effects of the non-severe impairment are then considered throughout the remainder of the sequential evaluation. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); see also, Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment …. Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

However, harmless error analysis does not apply here. That is because application of the special psychiatric review technique can result in a finding of disability at Step Two, obviating the need to complete the sequential analysis. One possible outcome under the special technique is a finding that the functional limitation caused by plaintiff's depression is "extreme" under the five-point scale set out at 20 C.F.R. § 404.1520a(c)(4).[4] As noted, a finding of "extreme" functional limitation would render plaintiff unable "to do any gainful activity" (which is the same

---

[4] The regulations do not define what is meant by "extreme" in this context, although it is clear that it is more restrictive than "marked." In newly promulgated regulations, to become effective January 17, 2017, the Commissioner adds a rating of "extreme" to the Listings, and defines it to mean that "You are not able to function in this area independently, appropriately, effectively, and on a sustained basis." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 66,164 (September 26, 2016) (to be promulgated as Listings (20 C.F.R. Pt. 404, Subpt. P, App'x 1) ¶ 12.00F(2)(e)).

11

standard for meeting or equaling a Listings), and therefore "disabled." See id. (a finding of "extreme" limitation "represents a degree of limitation that is incompatible with the ability to do any gainful activity"); 20 C.F.R. § 404.1525 (a) ("[t]he Listing of Impairments … describes … impairments that we consider to be severe enough to prevent an individual from doing any gainful activity").

The error at this Step therefore cannot be considered "harmless." If the analysis had come out differently – specifically, if the ALJ had found "extreme" functional limitations caused by plaintiff's depression – plaintiff would necessarily have been found to be unable to engage in any gainful activity, and therefore disabled. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (error is harmless where "the ALJ would have reached the same result absent the error").[5]

The ALJ's error was compounded by his use of the Listings to determine severity at Step Two, rather than the special technique he was required to use at that Step. The Listings, as they are currently formulated, do not permit a finding of "disabled" based upon limitation in a single area of functionality, no matter how restrictive ("marked" or "extreme") that limitation may be. See Listings ¶ 12.04B (affective disorders, including "depressive syndrome").[6] The special psychiatric technique does so provide. Accordingly, the ALJ precluded even the possibility of a

---

[5] The court is aware of unpublished, "memorandum" Ninth Circuit decisions that applied the harmless error analysis to a failure to find that a mental impairment was "severe" at Step Two, where the limitations caused by the non-severe impairment were considered later in the sequential analysis (after other impairments were found to be "severe"). See, e.g., Davenport v. Colvin, 608 F. App'x 480, 481 (9th Cir. 2015) ("any error regarding the step-two determination is harmless because the ALJ proceeded to step five and considered Davenport's mental impairments as part of that analysis"). However, none of those cases contain any mention of the special psychiatric review technique, or the effect of finding an "extreme" functional limitation at that Step using the special technique. Accordingly, this court does not read those decisions – which, being unpublished, do not establish legal precedent in any event (9th Cir. R. 36-3(a)) – to silently hold that harmless error analysis applies even where application of the special technique might resolve the disability issue at Step Two. A more plausible reading of those cases is that there was no reasonable chance of finding that the mental impairment imposed "extreme" limitations on plaintiff's functioning, in which case the harmless error analysis could proceed.

[6] The new regulations, to become effective January 17, 2016, change this, and call for a finding of disability under the Listings even if only one of the functional areas is limited to an "extreme" degree. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. at 66,167 (to be promulgated as Listings ¶ 12.04B).

12

disability determination based on "extreme" limitation in, for example, social functioning, even if the remaining areas were less restrictive. Had the ALJ used the special technique as required, the possibility of finding plaintiff disabled at Step Two, based upon one finding of "extreme" functional limitation, would have been within his consideration.

### b. Factual inapplicability of harmless error analysis

Even if harmless error analysis were available in this context, the court would not find harmless error under the facts of this case. After finding that plaintiff's depression was "nonsevere," the ALJ ignored any possible limitations resulting from the allegedly non-severe impairment. There is no indication that any such limitations were considered by the ALJ at any subsequent Step in the sequential analysis. To the contrary, after disposing of the depression issue at Step Two, the ALJ's analysis focused entirely on plaintiff's physical impairments and limitations, and makes no further reference to Dr. McAuley or plaintiff's depression. Accordingly, the factual predicate for applying a harmless error analysis is lacking here. See Lewis, 498 F.3d at 911 (harmless error analysis applied where ALJ considered limitations of non-severe bursitis later in the sequential analysis).

## VII. REMAND

The errors described above require a remand for further consideration. It is up to the ALJ in the first instance to determine the severity level of plaintiff's depression using the special psychiatric review technique, and to consider the limitations caused by that impairment in subsequent Steps of the sequential evaluation. See, e.g., Keyser, 648 F.3d at 726 (ALJ must apply special technique of 20 C.F.R. § 404.152a where there is a colorable claim of mental impairment).

## VIII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 14), is DENIED;
3. This matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this decision; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: December 19, 2016

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE